**ASHLAND–WARREN, INC., d/b/a Sam Finley Company, Plaintiff,**

v.

**Bill N. SANFORD and Ronald L. Bell, d/b/a Sanford–Bell Company, a partnership, Defendants.**

Civ. A. No. 79–366–N.

United States District Court, M. D. Alabama, N. D.

Sept. 3, 1980.

with its principal place of business in Delaware, that defendants are citizens of the State of Alabama, and that the amount in controversy herein exceeds $10,000 exclusive of interest and costs.

The areas of dispute herein are relatively narrow. Of the three contracts executed by the parties, liability is undisputed by the defendants on two of them with the contention being made that the third contract was executed under duress. The other area of dispute concerns the defendants' counterclaim for damages as a result of plaintiff's delay in performance. The Court holds defendants liable for the amount in suit, plus accrued interest and a reasonable attorney's fee as provided in two of the contracts, for the reasons hereinafter shown. The Court denies defendants any relief on their counterclaim.

## FACTS

Plaintiff and defendants entered into a contract dated March 22, 1978, wherein it was agreed that plaintiff would perform certain paving construction at the Cross Creek Apartments in Columbus, Georgia in exchange for defendants' promise to pay $12,596.40 for the products and services stated in the contract. (See Pltf's Ex. 14) Defendants made payments against this indebtedness in the amount of $6,900.00, leaving a balance due of $5,696.40 plus simple interest at 6 per cent per annum from May 14, 1979 in the sum of $447.06 and interest that had accrued prior to May 14, 1979 in the amount of $230.89, or a total of $6,374.35. Defendants concede this work was properly done, and this indebtedness is not in dispute.

Plaintiff and defendants had earlier entered into a separate contract dated March 6, 1978, wherein the parties agreed that plaintiff would perform certain paving construction at the York Elderly Housing Project in York, Alabama in exchange for defendants' promise to pay at the agreed rate for the products and services stated in the contract. Plaintiff purportedly performed its obligations under the contract,

Bourdeaux & Jones, William C. Hammack, Meridian, Miss., Lange, Simpson, Robinson & Sommerville, James L. Clark, Birmingham, Ala., for plaintiff.

Hemphill & Hayes, Kenneth T. Hemphill, Montgomery, Ala., Watkins, Pyle, Ludlam, Winter & Stennis, William N. Reed, and Betty A. Morgan, Jackson, Miss., for defendants.

## OPINION

HOBBS, District Judge.

This cause came on to be heard at trial before this Court on July 14, 1980. Final submission to the Court for decision was on August 7, 1980, the date the Court received the last brief from the parties. Jurisdiction of this cause is based on diversity, 28 U.S.C. § 1332, it being the finding of this Court that plaintiff is a Delaware corporation

acknowledging a limited list of defects which plaintiff agreed to repair at no charge. Plaintiff had subcontracted the preparation of the road base to Charles Talbert Construction Company. The specifications in the contract called for specific grades which would allow water drainage over the asphalt surface in prearranged patterns. The initial paving job was rejected by defendants and by the inspector from the Department of Housing and Urban Development. The paving job had deteriorated in several areas caused by the seepage of water into the base material. Two factors contributed to this seepage: one was defendants' failure to back fill around the curbs and gutters prior to the application of the asphalt, and the other, and more significant, factor was plaintiff's failure to achieve the specified thickness of the asphalt.

After the rejection by the federal inspector of the asphalt paving job, the parties corresponded as to how their problem could be remedied. Several such letters were admitted in evidence. Kim Stokes, an employee of the plaintiff, examined the paving job and agreed that there were certain defects in the parking bays and that in those areas the grade was improper. He and defendant Bell discussed an arrangement whereby plaintiff agreed to do a complete asphalt overlay at the York Elderly Housing Project in exchange for defendants' promise to pay at plaintiff's cost for the paving. It was understood between the parties that there would be no charge for the new asphalt applied in the parking bay areas. During these discussions prior to the execution of the contract between the parties dated June 28, 1978, defendant Bell never contended that he was blackmailed or coerced into signing the June 28 contract. (Pltf's Ex. 4) In communications to plaintiff after plaintiff had fully performed on the June 28 agreement, defendant Bell acknowledged his obligation to the plaintiff on the York Elderly Housing Project. Defendants were billed for 170.24 tons of applied asphalt at $20.00 per ton.

The defendants were sent invoices for the services and materials used in performance of the March 6, 1978 York Elderly Housing Project in the following amounts:

| | | |
|---|---|---|
| (1) | Prepare subbase at hourly rate | $ 4,021.00 |
| (2) | 820 cubic yards topping at $2.50 per cu. yd. | 2,050.00 |
| (3) | 3,325 sq. yds. asphalt paving applied | 9,143.75 |
| | TOTAL | $15,214.75. |

The above quoted figures appeared on plaintiff's invoice dated May 7, 1978. The balance on said invoice remains outstanding plus simple interest at 6 per cent per annum from May 7, 1978 in the amount of $2,123.28, or a total of $17,338.03.

Defendants received a second invoice dated July 16, 1978 for the products and services performed as a result of the contract entered into by the parties on June 28, 1978. That invoice contained the following item:

Hot plant mix asphalt, 170.24 tons at $20 per ton, total     $ 3,404.80.

The balance on this invoice remains outstanding plus simple interest at 6 per cent per annum from July 16, 1978 in the sum of $436.02, or a total of $3,840.82, for a combined total outstanding balance on the two York Elderly Housing invoices of $21,178.85.

Each of the three contracts in question in this cause was executed on a form which states: "Sam Finley Company, a division of Ashland Oil, Inc. . . ." However, at the time that each of these contracts was executed, Sam Finley Company was simply a trade name of Ashland–Warren, Incorporated, a wholly owned subsidiary of Ashland Oil, Incorporated.

## CONCLUSIONS OF LAW

This Court takes jurisdiction of this cause under 28 U.S.C. § 1332. The substantive law to be applied in this case is the law of Alabama. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

Defendants assert that plaintiff is not the real party in interest as required by Rule 17(a), Federal Rules of Civil Procedure, which provides: "Every action shall

be prosecuted in the name of the real party in interest...." At the time of the execution of the contracts in question herein, it is uncontroverted that Sam Finley Company was neither a natural nor artificial person but was a trade name owned by Ashland–Warren, Incorporated. The facts show that between September 19, 1976 and October 1, 1977, Sam Finley Company was a division of Ashland Oil, Incorporated. The forms on which these contracts were executed represented that Sam Finley Company was a division of Ashland Oil, Incorporated at the time of their execution. The plaintiff's explanation for the error is that the forms were obsolete creating a mistake in the description of Sam Finley Company in the contracts. The effect of said mistake placed Ashland–Warren, Incorporated in the position of an undisclosed principal. In *Maples v. Morring*, 207 Ala. 352, 92 So. 470 (1922), the Alabama Supreme Court held:

> ... the rule seems to be universally accepted that, where an agent on behalf of his principal, enters into a simple contract as though made for himself, and the existence of the principal is not disclosed, the contract inures to the benefit of the principal, who may sue thereon as the real party in interest.

Therefore, this Court holds that Ashland–Warren, Incorporated doing business as Sam Finley Company, the plaintiff herein, is the real party in interest entitled to prosecute an action to enforce the subject contracts. This result is in keeping with the stated purposes of Rule 17(a):

> ... to enable a defendant to avail himself of evidence and defenses that he has against the real party in interest, and to assure him finality of judgment, and that he will be protected against another suit brought by the real party in interest on the same matter. *Celanese Corp. of America v. John Clark Industries*, 214 F.2d 551, 556 (5th Cir. 1954)

The defendants do not dispute their liability to the plaintiff for the work done at the Cross Creek Apartments in Columbus, Georgia. It is the opinion of the Court that plaintiff is entitled to recover from defend-ants the sum of $6,374.35 on the Cross Creek Apartments contract.

The evidence showed the existence of two contracts with respect to the York Elderly Housing Project. Defendants argue that plaintiff's improper performance under the contract dated March 6, 1978, caused deterioration of the asphalt surface. Plaintiff argues that it was defendants' failure to comply with the contract and timely to back fill around the curbs and gutters that ultimately caused the deterioration which led to rejection by the federal inspector of the paving construction.

Defendants' alternatives prior to the June 28 contract because the March 6 contract had not been satisfactorily completed were:

(1) Contract with another subcontractor for performance of the work allegedly improperly performed by plaintiff, reserving all of their rights against plaintiff;

(2) Contract with plaintiff to correct the defects with plaintiff assuming part of the repair costs and defendants paying part;

(3) Delay construction of the entire project pending the resolution of the dispute with plaintiff through legal redress.

(This last alternative was totally impractical because of the cost to defendants from a prolonged delay.)

Defendants chose the second alternative by executing a contract with plaintiff on June 28, 1978. Under this June 28 contract, plaintiff agreed to assume 30 per cent of the repair costs and defendants agreed to pay for the balance of the materials at the cost to plaintiff. With respect to this June 28 contract, defendants make two contentions:

(1) The contract is void because it was procured under duress.

(2) Absent a finding of duress, the defendants are not liable for 30 per cent of the balance of $3,404.80 because plaintiff was responsible for the defective parking bays which represent-

ed approximately 30 per cent of the paved surface.

■ Defendants' assertion of duress is without merit. *The Second Restatement of Contracts*, § 317(1) (Tent. Draft No. 12), (1977) states that duress may render a contract voidable "where a party's manifestation of assent is induced by an improper threat that leaves him no reasonable alternative . . ." The defendants' decision to contract with the plaintiff on June 28, 1978, was a business judgment free of any improper threats which would render the contract voidable. The resolution of the dispute between plaintiff and defendants is the type of compromise entered into between general contractors and sub-contractors on many, if not most, large undertakings. Parties should be free to work out by compromise these differences without the subsequent intrusion of a court with a finding of coercion. In one sense, all settlements have a measure of coercion. The coercion here allegedly involved is insufficient to void the June 28 agreement of the parties.

Furthermore, defendants' letter to plaintiff dated August 16, 1978 (Pltf's Ex. 3) acknowledges the debt on the June 28 contract. Certainly, the alleged duress did not compel the drafting of said letter some eighteen days after the execution of the contract.

The June 28 contract contained the following provision:

Unless a lump sum price is to be paid for the foregoing work and is clearly so stated it is understood and agreed that the quantities referred to above are estimates only and that payment shall be made at the stated unit prices on the actual quantities of work performed by the Company as determined upon completion of the work.

The quantity estimate in the contract was 180 tons. Defendant Bell changed the figure to 120 tons. The actual amount used to repave the surface excluding the parking bays was 170.24 tons, the amount for which defendants were subsequently billed. David Ward, defendants' employee, was present as the loads of asphalt were applied and accepted the tickets totaling 170.24 tons. Thus, the Court is of the opinion that the defendants are liable for the balance of $3,404.80, plus accrued interest. Further, it is held that said indebtedness is in addition to the indebtedness of $15,214.75 plus accrued interest, created under the contract dated March 6, 1978. This result is consistent with the view that the contract dated June 28, 1978, was a compromise intended to settle the parties' dispute as to the contract dated March 6, 1978. The latter contract is deemed a modification of the first supported by reciprocal and sufficient consideration. *Jones v. First National Bank of Greensboro*, 206 Ala. 203, 89 So. 437 (1921); 17A C.J.S. *Contracts* § 376b.

Pursuant to the parties' stipulation as to the reasonableness of plaintiff's claim of a 15 per cent attorney's fee, the Court awards plaintiff said fee for the contracts dated March 6, 1978 and June 28, 1978. The contract dated March 22, 1978, concerning the Cross Creek Apartments in Columbus, Georgia, contained no provision for attorney's fee, and plaintiff asserted no such claim.

■ Defendants' counterclaim alleges that plaintiff breached its warranty to perform the work specified in the contract dated March 6, 1978, in a skilled and workmanlike manner. The defendants are estopped to assert said claim by virtue of the contract dated June 28, 1978. The settlement of the dispute was a large part of the consideration for the contract dated June 28, 1978, which modified the earlier contract. The defendants should take nothing from their counterclaim. Moreover, defendants failed to prove by a preponderance of the evidence that they suffered any damages by reason of plaintiff's failure to perform properly the March 6, 1978 contract.

A judgment will be entered in accordance with this opinion.

### JUDGMENT

In accordance with the opinion entered herein this date, it is the

[redacted] 

ORDER, JUDGMENT and DEGREE of this Court that plaintiff recover from the defendants the sum of $30,730.03 (of which $3,176.83 is the sum awarded as an attorney's fee), plus costs, for which execution may issue.